| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN GRANT CIRCUIT COURT |
| | ) SS: | |
| COUNTY OF GRANT | ) | |

STATE OF INDIANA

Vs

RYAN TYRONE MCMULLEN     CAUSE NO: 27C01-0904-FA-134

## ORDER OF SENTENCE

This matter is before the Court for re-sentencing.[1] The State of Indiana appeared by Chief Deputy Prosecuting Attorney Evan Hammond and Deputy Prosecuting Attorney Jamie Moore and the Defendant appeared in person and with counsel Bruce N. Elliott. The Defendant was convicted following a trial by jury on the 12th day of August, 2010, and the Court now finds the Defendant guilty of Count 1, Possession of Cocaine, a Class A felony, Count 3, Possession of Cocaine, a Class C felony, and Count 4, Possession of Marijuana, a Class D felony. Due to double jeopardy considerations, the conviction on Count 3 is vacated.

The Court has considered evidence presented during jury trial and at the sentencing hearing of the Defendant. For its sentencing statement, the Court finds as aggravating factors 1) the Defendant's lengthy history of criminal or delinquent behavior despite his young age at the time of commission of the offenses, which history includes numerous failures to abide by the terms and conditions of probation or other supervision; and 2) and the fact that the Defendant had been

---

[1] Resentencing was directed following a federal *habeas corpus* proceeding in the U.S. District Court for the Southern District of Indiana in *Ryan T. McMullen v. Gary Dalton and Melissa Stephenson,* Cause No. 2:19-cv-00356-JRS-MJD. *See also McMullen v. Dalton,* 83 F.4th 634 (7th Cir. 2023). It should also be noted that in 2021, the Court modified the original sentence herein to afford the Defendant the privilege of the Community Transition Program, Reentry Court, and probation thereafter. Due to the intervening orders on *habeas corpus,* and the resulting resentencing, the Court finds that modification order to be a nullity. It should further be noted that Defendant has been alleged to have violated the terms of his supervision therein by committing a host of new offenses in Cause Nos 27D01-2312-F6-833 and 27D01-2403-F2-11, including, in 27D01-2403-F2-11, strikingly similar behavior to the offenses that he was convicted of in this cause.

1

released from jail, applied for home detention and was given a report date for incarceration, after which he failed to report to jail as directed to serve his sentence; in fact, these offenses were committed while Defendant was a fugitive from this Court's warrant. The Court accepts as mitigating factors the Defendant's troubled childhood and mental health issues which resulted therefrom, and that his imprisonment may be a hardship on his dependents. The Court's analysis herein echoes that set forth in the Court's lengthy findings in its order denying post-conviction relief entered in Cause No. 27C01-1112-PC-000009:

> McMullen alleges that Lewis should have presented additional evidence at sentencing regarding the mitigating factor of McMullen's troubled childhood. The record reflects that Lewis, in fact, did assert that McMullen's troubled childhood was a mitigating factor at sentencing. McMullen alleges, however, that Lewis should have called a host of friends, family members, and his child therapist to bolster that argument. The Court notes that testimony of friends and family members at sentencing indicating that they like the criminal defendant and offering their opinion of where and why such person went off the tracks of lawful behavior seldom offers any utility to the sentencing process. In this case, such testimony, to the extent that it had any value at all, would have been cumulative of facts already established by the Presentence Investigation Report and arguments already offered by Lewis. Further, even with the assistance of hindsight, McMullen fails to establish how that troubled childhood excuses his decision to engage in the illegal business of drug dealing. This is not a case where a defendant was repeating or re-enacting abuse which was perpetrated on him. Rather, it was entrepreneurial, albeit illegal, behavior.
>
> To the contrary, a significant factor in this Court's sentencing decision is that McMullen had been offered many different opportunities prior to the incidents in question to rehabilitate his behavior, including probation, placement at the Youth Opportunity Center, placement at George Junior, cognitive behavioral therapy, behavioral aftercare, POOL School, counseling, Family Services Homebased Program, alcohol and drug counseling, and intensive outpatient treatment, in addition to the intermediate punitive sanctions of license suspensions, detention, house arrest, and jail. (Transcript, p. 498). Throughout the course of his criminal history, he had demonstrated no interest in changing his criminal behavior. None of the evidence which McMullen argues should have been

offered at sentencing would change or obscure those stark facts. McMullen had the opportunity to have his sentence independently reviewed on direct appeal. To that end, the Court of Appeals noted:

> The nature of McMullen's offenses justifies a maximum sentence. While it is true that no evidence of any specific drug sale was introduced at McMullen's trial, we cannot overlook what the record as a whole makes abundantly clear: McMullen was dealing drugs out of Apartment 410, not just near a family housing complex, but in a family housing complex. In addition to the vast amounts of illegal drugs found in the apartment (several thousand dollars' worth each of crack cocaine and marijuana), police also found a digital scale and a loaded nine millimeter handgun, other trappings of the drug dealer. Moreover, police found a letter in the apartment from McMullen to Glasser stating, "I'm gonna get a job and sell weed and ex" and "no more cocaine." Appellant's App. p. 61. Finally, police observed a known drug user leave the apartment who told them that she had tried to purchase crack cocaine from McMullen, an attempt that was apparently unsuccessful only because she had "too much drama." Tr. p. 295. The nature of McMullen's offenses is that they were part of an ongoing drug-dealing enterprise located in a family housing complex.
>
> We also believe that McMullen's maximum sentence is justified by his appalling juvenile and adult criminal record, all amassed by the time he turned twenty-three. Beginning when he was ten, McMullen was adjudged to have committed what would be, if committed by an adult, Class B felony armed robbery, Class D felony auto theft, Class D felony receiving stolen property, Class A misdemeanor conversion, Class A misdemeanor criminal mischief, Class B misdemeanor battery, two counts of Class A misdemeanor resisting law enforcement, Class B misdemeanor disorderly conduct, false informing, illegal possession of alcohol, and Class A misdemeanor marijuana possession. McMullen was also adjudged as a juvenile twice to be incorrigible, to have violated curfew, to have run away, and to have violated the terms of probation three times.
>
> As an adult, McMullen has been convicted of Class D felony criminal recklessness with a deadly weapon, Class D felony marijuana possession, Class A misdemeanor pointing a firearm, Class C misdemeanor illegal possession of alcohol, Class A misdemeanor carrying a handgun without a license, two counts of Class A misdemeanor

3

> marijuana possession, Class C misdemeanor operating a vehicle never having received a license, Class C misdemeanor operating a motor vehicle while intoxicated, and Class B misdemeanor criminal mischief. Moreover, McMullen has been incarcerated on several occasions; has violated the terms of adult probation; has been cited several times for misconduct in the Grant County jail; has been charged with eighteen additional crimes that were later dismissed; and, as of sentencing, had attempted murder, Class D felony criminal recklessness, and Class C felony battery by means of a deadly weapon charges pending. We find McMullen's numerous firearms-related convictions to be particularly disturbing. McMullen's multitudinous juvenile adjudications, criminal convictions, and other contacts with the criminal justice system have not caused him to reform himself. The nature of McMullen's offenses and his character justify his maximum sentence.
>
> *McMullen v. State*, 2011 Ind. App. Unpub. LEXIS 861 (Slip op. at pp 14-17). Thus, what was outcome-determinative at sentencing was not the quality of the argument that his attorney made on the day of sentencing, but rather McMullen's increasingly troubling behavior and history which occurred in the thirteen years prior to the day of sentencing.

Based upon such, the Court now sentences the Defendant to a term of imprisonment at the Indiana Department of Correction of fifty (50) years executed on Count 1 and three (3) years executed on Count 4, concurrent.

The Court further finds that the Defendant should be disenfranchised during the term of imprisonment imposed and that the Defendant is entitled to **295 actual days credit for time spent awaiting the original sentencing as of September 10, 2010; 4029 actual days for time serving the executing sentence prior to the original sentencing; and 285 actual days awaiting resentencing; for a total of 4609 actual days. This total does not include any earned credit time for programming at IDOC, for which Defendant may receive credit per IDOC policy.** Further, Defendant should be given credit for good time conduct for time spent in confinement. The Court further finds that as a convicted felon the defendant is hereby ordered to submit a DNA

4

sample to the appropriate authorities pursuant to I.C.10-13-6.

Pursuant to I.C. 11-12-5-7 the Defendant is ordered to reimburse Grant County for any medical care expenses incurred by the County in providing medical care to the Defendant while an inmate in the Grant County Jail.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT,** that the Defendant is sentenced to a term of imprisonment at the Indiana Department of Correction of fifty (50) years executed on Count 1 and three (3) years executed on Count 4, concurrent. The State moved to dismiss the habitual offender enhancement at the original sentencing, and the same is again dismissed herein.

The Defendant is determined to be indigent and fees, fines and costs are waived.

After advisement of rights, the Defendant indicates he will be filing an appeal. The Court finds Defendant to be indigent. The Grant County Public Defender's Office is to designate an attorney for the appeal.

**SO ORDERED,** this 16th day of December, 2024.

MARK E. SPITZER, JUDGE
GRANT CIRCUIT COURT